# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHAWN L. GOODMAN, | ) |
| Petitioner, | ) |
| v. | ) 1:12CV596 |
| REUBEN FRANKLIN YOUNG, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On March 26, 2007, in the Superior Court of Rowan County, Petitioner pleaded guilty to first degree murder and no contest to attempted first degree murder and first degree sex offense with a child in cases 04 CRS 50328, 50329 and 50554. (Docket Entry 2, ¶¶ 1, 2, 4-6; see also Docket Entry 8, Exs. 1, 2.) In accordance with the plea arrangement, the trial court sentenced Petitioner to life imprisonment without parole plus a consecutive term of 330 to 405 months in prison. (Docket Entry 2, ¶ 3; see also Docket Entry 8, Exs. 1, 2.) Petitioner did not pursue a direct appeal. (Docket Entry 2, ¶ 8.)

Petitioner then submitted a pro se motion for appropriate relief ("MAR") to the state trial court (Docket Entry 2, ¶¶ 10, 11(a); see also Docket Entry 8, Ex. 3), which he dated as signed on

February 24, 2010 (see Docket Entry 8, Ex. 3 at 9),[1] and which that court accepted as filed on April 1, 2010 (id. at 2). The trial court denied the MAR by order dated and filed July 15, 2010. (Docket Entry 2, ¶ 11(a)(7), (8); see also Docket Entry 8, Ex. 4.) Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals seeking review of his MAR's denial (Docket Entry 8, Ex. 5), which he dated as submitted on September 20, 2010 (id. at 4, 5), and which that court received as filed on September 27, 2010 (id. at 2). The Court of Appeals denied Petitioner's certiorari petition by order dated October 12, 2010. (Docket Entry 8, Ex. 7.)

Petitioner thereafter submitted a second, pro se MAR to the state trial court (Docket Entry 2, ¶¶ 10, 11(b); see also Docket Entry 8, Ex. 8), which he dated as signed on November 1, 2011 (see Docket Entry 8, Ex. 8 at 14),[2] and which that court accepted as filed on November 18, 2011 (id. at 2).[3] The trial court denied the MAR by order dated and filed December 21, 2011. (Docket Entry 2, ¶ 11(b)(7), (8); see also Docket Entry 8, Ex. 9.) Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals seeking review of his second MAR's denial

---

[1] For attachments to Respondent's memorandum, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[2] Although the MAR's certificate of service reflects the date of October 31, 2011 (Docket Entry 8, Ex. 8 at 14), the previous page bears a date of submittal of November 1, 2011 (id. at 13).

[3] The trial court's order denying Petitioner's second MAR identifies the second MAR's filing date as November 13, 2011 (Docket Entry 8, Ex. 9 at 2); however, the file-stamp on the first page of the second MAR indicates the date of November 18, 2011 (Docket Entry 8, Ex. 8 at 2).

(Docket Entry 8, Ex. 10), which he dated as submitted on March 3, 2012 (Docket Entry 8, Ex. 10 at 4), and which that court received as filed on March 12, 2012 (id. at 2, 5). The Court of Appeals denied Petitioner's certiorari petition by order dated March 20, 2012. (Docket Entry 8, Ex. 12.)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 2), which he dated as submitted on June 9, 2012 (id. at 18),[4] and which the Court stamped as filed on June 14, 2012 (id. at 1). Respondent moved for summary judgment on both statute of limitation grounds and the merits. (Docket Entry 7.) Following Respondent's instant Motion, Petitioner filed (1) a "Motion for Leave to Conduct Discovery" (Docket Entry 11); and (2) a "Response in Opposition to the Respondent's Motion for Summary Judgment" and a brief in support (Docket Entries 13, 14). Respondent opposed Petitioner's request for discovery (Docket Entry 12) and Petitioner filed a reply (Docket Entry 16). The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 19.)

### **Petitioner's Claims**

Petitioner raises four claims for relief in his Petition: (1) he has discovered new evidence of his actual innocence, including a prior search of his vehicle and cell phone and email records; (2) the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose that exculpatory evidence; (3) he suffered

---

[4] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

ineffective assistance of his trial counsel; and (4) his guilty plea was not made knowingly and voluntarily. (Docket Entry 2 at 5-7, 8-9, 10, 12.)

## **Discussion**

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[5] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[5] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Liberally construing Petitioner's pro se filings, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), it appears he argues that "newly discovered evidence" entitles him to delayed commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D). (See Docket Entry 2 at 5-9.) Petitioner alleges that, in June 2010, he made a request under the Freedom of Information Act ("FOIA") to the Federal Public Defender's Office in Atlanta, Georgia, for a copy of his attorney's file from his federal bank robbery criminal case. (Id. at 7, 8; see also Docket Entry 14 at 2; Docket Entry 14-1 at 8.) Petitioner claims that when he received the file, he discovered three pieces of evidence which neither the prosecution nor his defense attorneys had disclosed to him in his state murder case: (1) records which allegedly show that he was logged into his email account at the time of the murder; (2) records which purportedly demonstrate that he was using his cellular telephone in Charlotte, North Carolina, at the time of the murder in Salisbury,

-5-

North Carolina; and (3) a report of a law enforcement search of his vehicle on January 24, 2004, which did not reveal the presence of incriminating sweat pants found in later searches of the vehicle on January 28, 2004. (Docket Entry 2 at 6-9.) Petitioner maintains that the prosecution's failure to disclose this evidence violated Brady and that he would not have pleaded guilty if he had known of this evidence. (Id. at 5, 10, 14.) Thus, Petitioner apparently contends that the limitations period should begin to run from the date he discovered this new evidence, i.e., the factual predicate of his current claims.

However, the Court does not find sufficient grounds for the application of subparagraph (D). The statute of limitations begins to run under subparagraph (D) when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004). Given his claim of actual innocence, Petitioner would have known of the existence of records allegedly showing his use of email and/or a cellular telephone during the time of the crime before he pleaded guilty. The date on which Petitioner actually obtained those records does not control in this context. Sistrunk v. Rozum, 674 F.3d 181, 189 (3d Cir. 2012) (holding that "evidence that is previously known, but only newly available does not constitute newly discovered evidence" under subparagraph (D)) (citation and internal quotation marks omitted); Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir. 1998) (finding that petitioner knew of factual

predicate when he first realized his trial counsel had failed to advise him properly and not when he finally obtained affidavit from trial counsel to that effect years later); Oakes v. Wright, No. Civ.A. 705CV00168, 2005 WL 1189591, at *4 (W.D. Va. May 16, 2005) (unpublished) (declaring that petitioner knew of the existence of his own probation records at the time of his revocation hearing and disregarding date he actually received such records). Thus, subparagraph (D) does not apply with respect to Petitioner's discovery of the email and cellular telephone records.

With regard to the report from the vehicle search on January 24, 2004, Petitioner has failed to establish that he could not have discovered this report earlier with the exercise of due diligence. Petitioner alleged in his first MAR that his trial counsel had no contact with him for an extended period of time, failed to interview potential witnesses and investigate pertinent issues, failed to elicit expert testimony and failed to move the court for a psychological evaluation of Petitioner. (Docket Entry 8, Ex. 3 at 3-4.) Petitioner further claimed that, due to his dissatisfaction over such matters, he asked his attorneys to withdraw as his counsel. (Id.) Petitioner has failed to explain why, given his apparent belief in his innocence and significant dissatisfaction with his trial counsel, he waited over three years to make his FOIA request. Under these circumstances, a delayed commencement of the statute of limitations under subparagraph (D) does not apply. See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where

petitioner failed to explain why he could not have discovered the alleged Brady materials earlier); Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier) (quoting Allen v. Hancock, No. 1:11CV123-HSO-JMR, 2011 WL 7461993, at *2 (S.D. Miss. Nov. 9, 2011) (unpublished)); Norrid v. Quarterman, No. 4:06-CV-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that petitioner bears burden of establishing applicability of section 2244(d)(1)(D), including his due diligence, and that conclusory statements do not satisfy burden); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (finding subparagraph (D) inapplicable where petitioner's "contention that he could not have discovered [factual predicate] sooner with due diligence is unsupported and conclusory").[6]

As the record does not reveal any grounds for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case,

---

[6] In ruling on Petitioner's second MAR, the trial court found as a fact that the State had provided Petitioner's trial counsel with a full discovery disclosure and that trial counsel had then provided that file to Petitioner on January 17, 2006. (Docket Entry 8, Ex. 9 at 3.) In fact, Petitioner attached a letter from his attorneys indicating they provided him with the discovery file on January 17, 2006, to his "Response in Opposition to Respondent's Motion to Deny Petitioner's Motion for Discovery." (Docket Entry 16-1 at 1.) Thus, the finding that Petitioner's attorneys received these materials is uncontradicted in the record, i.e., although Petitioner alleges that he never received such materials (see Docket Entry 14 at 6-7, 9), Petitioner has not produced affidavits from his trial counsel refuting their receipt of the discovery materials. See Footes v. Shearin, No. WDQ-11-1222, 2011 WL 6019847, at *2 & n.7 (D. Md. Nov. 30, 2011) (unpublished) (rejecting applicability of subparagraph (D) where petitioner had "presented no evidence . . . to support his bald assertion that the information in question was not revealed to his trial attorney").

-8-

Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state trial court entered judgment against Petitioner on March 26, 2007 (see Docket Entry 8, Ex. 2), and Petitioner did not appeal his convictions further (Docket Entry 2, ¶ 9(g), (h)). As Respondent has asserted (Docket Entry 8 at 12-13), and Petitioner has failed to contest (see Docket Entry 14), Petitioner's convictions became final on March 26, 2007, because he pleaded guilty and received a mandatory life sentence for his first degree murder conviction and a sentence in the presumptive sentencing range for his remaining offenses and prior record level. See N.C. Gen. Stat. § 15A-1340.17 (2007). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-979(b) & 15A-1444. Petitioner has not alleged or otherwise shown that any of these grounds existed and thus he had no right to appeal. Under these circumstances, Petitioner's time to file a habeas petition in this Court began to run on March 26, 2007. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2

(W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[7] The limitations period then ran for 365 days until it expired a year later on March 26, 2008, over four years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until April 1, 2010, well after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 2 at 17; Docket Entry 14 at 10-13.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct.

---

[7] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given when Petitioner filed his instant Petition, those 14 days would not affect the timeliness analysis.

-10-

2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some <u>extraordinary circumstance</u> stood in his way' and prevented timely filing." <u>Id.</u> (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)) (emphasis added).

First, Petitioner asserts that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows for a "rigorous actual innocence exception" to the bar on second or successive petitions and that this same exception should apply to initial petitions, such as the instant Petition, to excuse their untimeliness. (Docket Entry 2 at 17.) Petitioner asserts that he has made a sufficient showing of actual innocence based upon the newly discovered <u>Brady</u> materials such that the Court should excuse the late filing of the Petition. (<u>Id.</u>) This argument lacks merit.

Neither the United States Supreme Court nor the Fourth Circuit has recognized an actual innocence exception to the one-year limitations period.[8] Other federal courts of appeals have divided over this issue. <u>Compare</u> <u>Souter v. Jones</u>, 395 F.3d 577, 597-601 (6th Cir. 2005) (allowing equitable tolling of statute of limitation based on showing of actual innocence under standard

---

[8] On October 29, 2012, the Supreme Court granted certiorari in <u>McQuiggins v. Perkins</u>, No. 12-126, 133 S. Ct. 527, to address the existence of an actual-innocence exception to <u>Holland</u>'s requirements for equitable tolling that a petitioner (1) show an "extraordinary circumstance" that "prevented timely filing" of a habeas petition; and (2) demonstrate that "he has been pursuing his rights diligently." <u>Holland</u>, 560 U.S. at ___, 130 S. Ct. at 2562 (quoting <u>Pace</u>, 544 U.S. at 418). The Supreme Court heard oral arguments in the case on February 25, 2013.

-11-

established in Schlup v. Delo, 513 U.S. 298 (1995)), with Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005) (ruling that actual innocence has no bearing on time-bar).

However, even if Petitioner's claim of actual innocence could have some bearing on the time-bar issue, he has failed to make the requisite showing. To demonstrate actual innocence, a petitioner must identify "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. That evidence must demonstrate the "'conviction of one who is actually innocent.'" Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Thus, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. Moreover, a petitioner must show factual innocence and not merely legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). Finally, new reliable evidence of innocence is a "rarity," Calderon v. Thompson, 523 U.S. 538, 559 (1998), and the quality of evidence necessary to support a claim of actual innocence "is obviously unavailable in the vast majority of cases," Schlup, 513 U.S. at 324.

Petitioner's alleged Brady materials do not constitute "new reliable evidence" of innocence within the meaning of Schlup. As discussed above, Petitioner's email and cellular telephone records for the time period of the murder do not constitute "new" evidence, as they existed at or before the time of his plea. Given

-12-

Petitioner's claim of innocence and corresponding assertions that he was using his cellular telephone and his email account in Charlotte, North Carolina at the time of the murder, he should have known of the existence of such records and should have diligently sought to obtain them at that time.  Further, the existence of a report showing that an initial search of his vehicle failed to reveal the presence of incriminating sweat pants does not demonstrate the "'conviction of one who is actually innocent,'" Schlup, 513 U.S. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Petitioner asserts that the absence of any discovery of the sweat pants during the vehicle search on January 24, 2004, combined with the sweat pants' presence in the January 28, 2004 searches demonstrates that Salisbury Police officers "planted" the sweat pants in his vehicle.  (Docket Entry 14-1 at 10.)  However, Petitioner's evidence-planting theory is purely speculative.  At most, the report regarding the earlier search would constitute impeachment evidence of the officers in question.  See, e.g., Flowers v. Harkleroad, No. 5:12-cv-49-RJC, 2012 WL 5879822, at *4 (W.D.N.C. Nov. 20, 2012) (unpublished) (finding newly discovered statements by victim's wife that vehicle in front of victim's home did not match petitioner's car "at best impeachment evidence").  This evidence falls far short of the standard necessary for asserting actual innocence, assuming that such an assertion could provide a basis for equitable tolling.

Petitioner next contends that he "has been held . . . in Special Housing Units within the Bureau of Prisons" which prevented

him from being able to file his Petition in a timely manner. (Docket Entry 2 at 17.) This argument lacks merit. Courts generally do not recognize the difficulties inherent in prison life, such as segregation, lockdowns or transfers, as grounds for equitable tolling. See, e.g., Diver v. Jackson, No. 1:11CV225, 2013 WL 784448, at *3 (M.D.N.C. Mar. 1, 2013) (unpublished) (recognizing that "prison conditions, such as transfers, lockdowns, or misplacement of legal papers, normally [do not] provide a basis for equitable tolling"); Allen v. Johnson, 602 F. Supp. 2d 724, 727-28 (E.D. Va. 2009) (observing that "transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances" warranting equitable tolling). That principle applies with particular force here, where Petitioner has failed to explain how his assignment to Special Housing Units prevented him from filing the instant Petition in a timely manner. Stillman v. LaMarque, 319 F. 3d 1199, 1202 (9th Cir. 2003) (finding equitable tolling unwarranted where petitioner failed to show how segregation made timely filing impossible).

In sum, the Petition is untimely.[9]

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 7) is **GRANTED**, that Petitioner's Motion for Leave to Conduct Discovery (Docket Entry 11) is **DENIED**, that the

---

[9] Petitioner's Motion for Leave to Conduct Discovery (Docket Entry 11) asks the Court "to compel certain law enforcement agencies" to provide him with access to their investigative files. (Docket Entry 11 at 1-2.) The Court will deny this Motion in light of the Petition's untimeliness.

-14-

Petition (Docket Entry 2) is **DISMISSED,** and that this action is **DISMISSED** pursuant to a contemporaneously entered judgment.

                                      /s/ L. Patrick Auld
                                       **L. Patrick Auld**
                           **United States Magistrate Judge**

May 23, 2013